Opinion issued January 29, 2009

 

 




 







In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00389-CR & NO. 01-07-00390-CR

____________


EARL TOTTENHAM, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 405th District Court

Galveston County, Texas

Trial Court Cause Nos. 06CR1463 & 06CR1464






O P I N I O N


 Appellant, Earl Tottenham, was charged with three offenses of tampering with
a governmental record (1) in trial court cause numbers 06CR1462, 06CR1463, and
06CR1464. After a jury trial on all three causes, appellant was convicted of the
charges in cause numbers 06CR1463 and 06CR1464. (2) The jury assessed punishment
at four years in prison for each cause, but recommended that the sentences be
suspended; the trial court did so and placed appellant on community supervision for
four years in each cause. Appellant appeals his convictions in cause numbers
06CR1463 and 06CR1464. (3) We determine whether: (1) the evidence was legally and
factually sufficient to support the convictions; (2) the trial court erred in not giving
a particular jury instruction and, if so, whether such error resulted in egregious harm;
(3) the sentence imposed was void; and (4) whether the assistance of trial counsel was
rendered ineffective by counsel's failure to object to the court's charge. We affirm
appellant's convictions and sentences in both causes.

Facts

 Appellant was elected constable for Precinct 3 of Galveston County in
November 1992 and was reelected three times--the last time being in November
2004. As a law enforcement officer, appellant was required to be a commissioned
peace officer. Appellant failed to maintain the training required by the Texas
Commission of Law Enforcement Education and Standards (T.C.L.E.O.S.E.) and,
consequently, his license as a peace officer expired on August 31, 2001. In May
2002, T.C.L.E.O.S.E. sent appellant a notice that his license had expired and that
T.C.L.E.O.S.E considered appellant to be terminated from the Precinct 3 Constable's
office. In October 2004, an audit of the Galveston County Precinct 3 Constable's
office was conducted and it was discovered that appellant's peace officer's license
had expired in August 2001. The investigator contacted appellant by phone on
October 26, 2004, and told him of this finding. Appellant told the investigator that he
had completed all his required training by attending classes at the Galveston County
Sheriff's Training Academy and would take the test to reinstate his license. Neither
the Galveston County Judge nor Galveston County's legal department was then aware
of the lapse of appellant's peace officer's license. 

 A second audit was conducted in May 2005 (4) by the same investigator and
among the items mentioned in the report following the audit was that the violations
found in the 2004 audit still existed. The 2005 audit report specifically mentioned
appellant's expired peace officer's license and the "extraordinary liability issues [that
presented] for the officers" that had been mentioned in the prior audit. The
investigator noted appellant's prior statements that he would be getting his
endorsement and retaking the test, which implied that appellant had completed the
mandatory training required. After reviewing records in Austin, the investigator
determined that appellant had not completed the training courses required before an
endorsement could issue and had taken no action except to request an application to
retest. The investigator specifically noted that appellant needed to complete "Identity
Theft, Special Investigative Topics, Asset Forfeiture, and Racial Profiling" courses
and complete a minimum of 80 training hours between September 1, 2001 and August
31, 2005. 

 In June 2005, the director of the Credentialing and Enforcement Division of
T.C.L.E.O.S.E. sent a letter to appellant, providing him a copy of the 2005 audit
report, warning him that it was important that he take corrective action without delay,
and requesting that he advise T.C.L.E.O.S.E., in writing, of the corrective action
taken, no later than July 10, 2005. A copy was sent to James Yarbrough, Galveston
County Judge. 

 The letter from T.C.L.E.O.S.E. was the first notice that Judge Yarbrough
received indicating a problem with appellant's licensing status. Until that time,
Yarbrough had been satisfied with appellant's job performance. After receiving the
letter, Yarbrough was concerned about liability issues that might arise from a
constable who was not properly licensed. Yarbrough sent a letter to appellant in early
July 2005, noting that appellant's license expired in August 2001 and reminding
appellant that a person elected as a constable was required to become licensed by
T.C.L.E.O.S.E. within 270 days of taking office. In the letter, the judge also noted
that appellant had begun a new term the prior January and therefore had 270 days
from the day he took office to complete the training and obtain his peace officer's
license. Yarbrough warned appellant that, if he was not successful in obtaining his
license within the prescribed time, appellant would be subject to removal from office. 
He reminded appellant that failure to adhere to licensing requirements increased the
exposure of the county and appellant to liability for any misdeeds that might occur,
and requested appellant to advise him when appellant resolved the issues identified
by the audit.

 Shortly after the letter was sent, appellant contacted Yarbrough and told him
that "there were mistakes" and that appellant had documentation to prove that he had
taken the required courses. Appellant indicated that there were clerical errors in the
system that he was working to resolve and added that "they were out to get him." 
Appellant informed the judge that he had certificates of completion for courses
referenced in the audits, and the judge asked appellant to provide the certificates to
Harvey Bazaman, the head of the County Legal Department, so that Yarbrough could
see them. Bazaman was to act as Yarbrough's agent for the receipt of the certificates.
This arrangement was later confirmed in a telephone conversation between all three
men. 

 Appellant provided three documents to Bazaman, two of which appeared to be
certificates of completion for two four-hour courses taken at the Galveston County
Sheriff's Academy in cultural diversity on March 17, 2003 and identity theft on July
24, 2003. The third document was a training enrollment form for the Galveston
County Sheriff's Academy, dated February 10, 2002, for enrollment in courses in
intermediate child abuse on April 3, 2002, criminal investigation on September 15,
2002, and intermediate use of force on March 26, 2002. Appellant requested
Bazaman to deliver the certificates directly to Yarbrough and Bazaman did so. 
Yarbrough accepted the certificates in good faith and did not check on their
authenticity. 

 Later review of the proffered certificates by Lieutenant Betty Frey, the training
division commander for the Galveston County Sheriff's Office, revealed that,
although the certificates were the type of certificates issued by the Galveston County
Sheriff's Academy at that time, (5) the fonts in which appellant's name and the date the
course was completed were typed were not ones utilized by the academy at the time
the certificates were dated. (6) The certificates appeared to be legitimate certificates
except for the name and dates which appeared to be typed manually, as was done
before the academy began using computers in the mid-1990s. (7) Frey determined that
the courses listed on the two purported certificates were not offered on the dates
stated on the certificates, and one was not offered by the department until the year
following that listed on the certificate. The dates for the classes listed on the
enrollment form also did not correspond to actual dates when the courses were
offered. Records from the academy and T.C.L.E.O.S.E confirmed that appellant had
not taken any courses at the Galveston County Sheriff's Academy after 1998. (8) The
dates listed for the courses were additionally suspect because, starting in 2002, and
continuing for several years, the Galveston County Sheriff's Academy was only
permitting Galveston County Sheriff's deputies to enroll in their classes. Appellant
would therefore not have been permitted to enroll in courses at the academy during
2002 or 2003. Although her signature appeared on the certificates, Frey denied
issuing either certificate to appellant on the dates in question, for the courses in
question. She also did not recall any request by appellant after July 7, 2005, to
provide him with any certificates of completion, and denied sending the certificates
in question to appellant after that date. 

 In early July 2005, the Galveston County District Attorney asked his chief
investigator, Ralph Mutchler, to investigate whether appellant had completed law
enforcement training. Mutchler spoke to appellant on two occasions--July 21, 2005,
and July 27, 2005--recording the first conversation. (9) Appellant told Mutchler that
he had been in contact with Betty Frey, that her records were incomplete, and that he
had obtained training from the Sheriff's office that would demonstrate that his license
should not have been suspended. Mutchler suggested that appellant provide him with
training certificates and told appellant that he would work with the Sheriff's
department to determine if there had been a mistake. Appellant also told Mutchler
that he had not received any notice from T.C.L.E.O.S.E. that he was lacking any
course work until he received a letter stating that his license had been suspended, and
informed Mutchler that he had taken several courses in 2004, 2005, and at the
Galveston County Sheriff's Academy after 2001. On July 27, 2005, appellant
provided Mutchler a training enrollment form identical to that provided to Judge
Yarbrough and some original training certificates. (10) 

 On October 28, 2005, appellant took his licensing examination with
T.C.L.E.O.S.E and failed. The county judge, who had been checking with
T.C.L.E.O.S.E. on appellant's progress in receiving his license within the permitted
270-day period, was notified of this fact and subsequently sent a letter to appellant
asking him to resign by November 4, 2005, or else legal action to remove him would
be commenced. Appellant resigned shortly thereafter. Judge Yarbrough later opined
that appellant had supplied him with the certificates in an attempt to convince the
judge that appellant was in good standing with T.C.L.E.O.S.E and that, if the
certificates were not legitimate, appellant had been trying to deceive him. (11) 

 Appellant was indicted for three offenses of tampering with governmental
records. The indictments for the two charges that are the subject of this appeal both
read as follows:

In the name and by the authority of the State of Texas, the GRAND
JURORS for the county of Galveston, State aforesaid, duly organized as
such at the JANUARY term, A.D., 2006, of the District Court of said
County, 405th Judicial District of Texas, upon their oaths in said Court
present that Earl Tottenham, on or about the 11th day of July A.D.,
2005, and anterior to the presentation of this indictment in the County
of Galveston and State of Texas, did then and there, with intent to
defraud or harm another, namely James Yarbrough, intentionally or
knowingly present a document, to-wit: a course completion certificate
issued by Galveston County Sheriff's Academy, Galveston County,
Texas, altering the name and date on the certificate, with knowledge of
its falsity and with intent that it be taken as a genuine governmental
record, against the peace and dignity of the State.


Sufficiency Challenges

 In appellant's first point of error, he contends that the evidence is legally and
factually insufficient to support the convictions. Appellant advances three challenges
to the sufficiency of the evidence, arguing that the evidence does not establish that:
(1) he altered the certificates; (2) he presented the documents with knowledge of their
falsity; and (3) he had the intent to defraud or harm Yarbrough. Appellant also
asserts that the State cannot rely on the presumption of Texas Penal Code section
37.10(g) (12) to establish the element of intent to defraud or harm because the evidence
at trial did not establish that the documents in question were governmental records. (13)

A. Standard of Review

 In assessing legal sufficiency, this Court must consider the entire trial record
to determine whether, viewing the evidence in the light most favorable to the verdict,
a rational jury could have found beyond a reasonable doubt that the accused
committed all essential elements of the offense. Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 S.W.3d 608, 612 (Tex. Crim.
App. 2001). We must "evaluate all of the evidence in the record, both direct and
circumstantial, whether admissible or inadmissible." Dewberry v. State, 4 S.W.3d
735, 740 (Tex. Crim. App. 1999). In conducting a legal-sufficiency review, we do
not reevaluate the weight and credibility of the evidence, but ensure only that the jury
reached a rational decision. Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App.
1993). It is the function of the trier of fact to resolve any conflict of fact, to weigh
any evidence, and to evaluate the credibility of any witnesses. See Dewberry, 4
S.W.3d at 740; Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); see
also Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991) (quoting Moreno
v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). We, therefore, resolve any
inconsistencies in the evidence in favor of the verdict, Matson, 819 S.W.2d at 843,
and "defer to the jury's credibility and weight determinations." Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006). 

 When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
"clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. See Watson v.
State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of
Johnson, we cannot declare that a conflict in the evidence justifies a new trial simply
because we disagree with the jury's resolution of that conflict. Id. Before concluding
that evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury's verdict. Id. In conducting a factual-sufficiency review, we must be cognizant of the fact
that a jury has already passed on the facts and avoid substituting our judgment for that
of the jury. Lancon v. State, 253 S.W.3d 699, 704-05 (Tex. Crim. App. 2008). The
jury is the sole judge of the credibility of the witnesses, and the weight to be given
their testimony, and may choose to believe all, some, or none of the testimony
presented. Id. at 707. We therefore afford almost complete deference to a jury's
determination when that decision is based on an evaluation of credibility. Id. at 705. 
In conducting a factual-sufficiency review, we also must discuss the evidence that,
according to the appellant, most undermines the jury's verdict. Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). We may not find the evidence factually
insufficient simply because we disagree with the verdict, but only because the verdict
represents a manifest injustice. Watson, 204 S.W.3d at 414. 

 Under state law, in determining both the legal and the factual sufficiency of the
evidence, we measure the evidentiary sufficiency by the elements of the offense as
defined by the hypothetically correct jury charge for the case. See Vega v. State, 267
S.W.3d 912, 915 (Tex. Crim. App. 2008) (citing Wooley v. State, No. P.D.-0861-07,
2008 WL 2512843, at *1, *6 (Tex. Crim. App. June 25, 2008)) (factual sufficiency);
Malik v. State, 953 S.W.2d 234, 239-40 (Tex. Crim. App. 1997) (legal sufficiency). 
A hypothetically correct jury charge "sets out the law, is authorized by the indictment,
does not unnecessarily increase the State's burden of proof or unnecessarily restrict
the State's theories of liability, and adequately describes the particular offense for
which the defendant was tried." Malik, 953 S.W.2d at 240. This standard ensures
that a judgment of acquittal, or a reversal for a new trial in the case of factual
insufficiency, is "reserved for those situations where there is an actual failure in the
State's proof of the crime rather than a mere error in the jury charge submitted." See
id.; Wooley, 2008 WL 2512843 at *6 (holding that remedy of new trial "sweeps too
broadly" and is "inappropriate remedy" to be granted because defendant received
windfall in jury instruction). 

B. Discussion

 The elements for tampering with a governmental record under penal code
section 37.10(a)(2) (14) are that (1) a person (2) makes, presents, or uses (3) any record,
document, or thing (4) with knowledge of its falsity and (5) with intent that it be
taken as a genuine governmental record. Tex. Penal Code Ann. § 37.10(a)(2)
(Vernon Supp. 2008). When the State seeks to charge a person with a second-degree
felony offense of tampering with a governmental record, it must additionally prove
that the accused committed the offense "with the intent to defraud or harm another"
and that the governmental record was of a particular type. Tex. Penal Code Ann. 

§§ 37.10(c)(1), (2) (Vernon Supp. 2008). 

 Appellant's first contention is that the evidence is legally and factually
insufficient to prove that he altered the names and dates on the certificates. 
Appellant relies on the following language in the charging paragraphs 

Now if you find from the evidence beyond a reasonable doubt that . . .
[appellant] did then and there, with intent to defraud or harm another,
namely James Yarbrough, present a document, to-wit: A course
completion certificate issued by Galveston County Sheriff's Academy,
Galveston County, Texas, altering the name and date on the certificate,
with knowledge of its falsity and with intent that it be taken as a genuine
government record then you will find the defendant guilty of tampering
with a governmental record as charged in the Indictment." 


(Emphasis added).


 Appellant argues that the phrase "altering the name and date on the
certificate," contained in both the indictment and the jury charge, imposed a
requirement on the State to prove beyond a reasonable doubt that appellant altered
the name and date on the certificates before appellant could be convicted of
tampering with a governmental record. Appellant asserts that without evidence that
appellant altered the two certificates, the State failed to sufficiently establish all the
elements of the crime as charged in the indictment.

 The statutory elements of tampering with a governmental record under penal
code section 37.10(a)(2) do not include "altering" the document in question, but
rather, an offense is committed if a person "makes, presents, or uses" a false record. (15)
 See Tex. Penal Code Ann. § 37.10(a)(2). The phrase "altering the name and date
on the certificate" serves to further describe the certificates, but is not a statutory
element of the offense charged. See Tex. Penal Code Ann. § 37.10(a)(2); Fuller
v. State, 73 S.W.3d 250, 252 (Tex. Crim. App. 2002) (federal constitutional law
measures evidentiary sufficiency against "elements of the offense as defined by state
law"). Here, the evidence is sufficient that appellant "presented" certificates with
altered names and dates. We overrule this sufficiency contention. 

 Appellant also contends that the evidence is legally and factually insufficient
to prove that he presented the documents with knowledge of their falsity or had the
intent to defraud or harm Yarbrough. Appellant acknowledges that intent may be
inferred from circumstantial evidence such as the acts, words, and conduct of the
accused. See Wolfe v. State, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996). He
argues, however, that the record demonstrates that he was well thought-of,
considered an honest individual, and his actions in delivering the certificates were
indicative of a person attempting to comply with the requirements of T.C.L.E.O.S.E.
and who was unaware that the documents were inaccurate, rather than a person with
the intent to defraud or harm. He also argues that the record fails to establish that he
knew that the certificates were false.

 There was no direct evidence presented at trial regarding appellant's intent or
his knowledge regarding the falsity of the certificates. Appellant did not testify at
the guilt-innocence phase, and the State introduced no statements attributed to
appellant that directly proved appellant's intent to defraud or harm or knowledge of
the falsity of the certificates. However, both intent and knowledge may be inferred
from circumstantial evidence and proof of a culpable mental state almost invariably
depends on circumstantial evidence. Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim.
App. 1978). We therefore consider the circumstantial evidence introduced at trial.

 The evidence at trial demonstrated that the documents were patently false. 
Frey testified that the certificates appeared to be legitimate certificates, altered to
indicate the completion of courses, which appellant did not attend on the dates
named, which were not conducted on the dates named, and in which, if the courses
had been offered on those dates, appellant could not have been enrolled because
enrollment in those courses was not offered at that time to law enforcement
personnel outside of Galveston County Sheriff's deputies. The circumstances under
which the certificates were produced--following two audits by T.C.L.E.O.S.E. and
under the threat of removal from office if proof of completion of required courses
was not provided--and the many statements made by appellant to various
individuals indicating that appellant had completed these courses at the Galveston
County Sheriff's Academy provide circumstantial evidence that appellant was aware
of the falsity of the certificates and sought to defraud Yarbrough in an attempt to
retain his position. Appellant suggested at trial that if appellant had the intent to
defraud, he would have altered the certificates to allege courses actually conducted
on the dates listed, and further suggested that he innocently passed on certificates
provided to him by Frey that he did not know were false. However, Frey denied
sending the falsified certificates to appellant and denied issuing the certificates with
the name and dates presented. 

 It was within the province of the jury to weigh the evidence presented,
evaluate the credibility of the witnesses and accept or reject the theories presented
to it, and we must defer to the jury's credibility and weight determinations. 
Marshall, 210 S.W.3d at 625; Lancon, 253 S.W.3d at 707. Under the record
presented on appeal, viewing the evidence in the light most favorable to the verdicts,
a reasonable jury could have found beyond a reasonable doubt that the elements of
knowledge and intent were shown. Likewise, reviewing the evidence in a neutral
light, we hold that the evidence establishing knowledge and intent is not so weak as
to render the verdicts wrong or manifestly unjust, nor are the verdicts against the
great weight and preponderance of the evidence. (16) Accordingly, the evidence was
legally and factually sufficient to support the convictions. 

 Appellant also asserts that the State could not rely on the presumption of 
Texas Penal Code section 37.10(g), upon which the trial court instructed the jury at
trial, which provides that a person is presumed to intend to defraud or harm another
if the person acts with respect to two or more of the same type of governmental
records or blank governmental record forms and such record or blank form is a
license, certificate, permit, seal title, or similar document issued by government. 
Tex. Penal Code Ann. § 37.10(g) (Vernon Supp. 2008). Appellant argues that the
evidence at trial did not demonstrate that he acted with respect to two or more of the
same type of governmental records, opining that the evidence only showed that he
acted in reference to documents purporting to be governmental records, not actual
governmental records. 

 As noted, the evidence amply supported the issue of intent to defraud or harm,
even without the application of any presumption. We therefore need not determine
whether this presumption in the charge--which was not objected to by appellant and
whose presence in the charge is not challenged on appeal--applied in this case. (17) 

 We hold that a reasonable jury could have found the essential elements of the
offense beyond a reasonable doubt and that the jury was rationally justified in
finding guilt beyond a reasonable doubt. The evidence was legally and factually
sufficient to support appellant's convictions, and we therefore overrule appellant's
first point of error.

Jury Charge

 In appellant's second point of error, he asserts that the trial court committed
egregious error by not giving a jury instruction on the law of presumptions pursuant
to section 2.05(a)(2) of the Texas Penal Code. (18) The State urges us to not review this
point because appellant affirmatively stated that he had no objections to the charge. 
The State relies on a line of authorities from this Court holding that an appellant
relinquishes his right to appellate review of a charge which he affirmatively
endorsed. See White v. State, 59 S.W.3d 368, 371 (Tex. App.--Houston [1st Dist.]
2001, pet. ref'd); Coleman v. State, 45 S.W.3d 175, 182 (Tex. App.--Houston [1st
Dist.] 2001, pet. ref'd), overruled on other grounds, Johnson v. State, 95 S.W.3d 568
(Tex. App.--Houston [1st Dist.] 2002, no pet.); Ly v. State, 943 S.W.2d 218, 220-21
(Tex. App.--Houston [1st Dist.] 1997, pet. ref'd); and Reyes v. State, 934 S.W.2d
819, 820 (Tex. App.--Houston [1st Dist.] 1996, pet. ref'd). However, this line of
authorities was overruled sub silentio by Bluitt v. State, in which the Court of
Criminal Appeals held that an affirmative denial of objection to the court's charge
shall be deemed equivalent to a failure to object to the charge and reviewed on
appeal as unobjected-to charge error. 137 S.W.3d 51, 53 (Tex Crim. App. 2004). 
We will therefore review this point. 

 In analyzing a jury-charge issue, our first duty is to decide if error exists.
Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). Only if we find
error do we then consider whether an objection to the charge was made and analyze
for harm. Id.; see also Warner v. State, 245 S.W.3d 458, 461 (Tex. Crim. App.
2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but
rather it establishes the degree of harm necessary for reversal."). If jury-charge error
exists to which no objection was lodged, we may not reverse on account of such
error unless the error was so egregious and created such harm that appellant was
denied a fair trial. Id.; Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1984). In order to determine egregious harm, we examine "the entire jury charge,
the state of the evidence, including the contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed by
the record of the trial as a whole." Almanza, 686 S.W.2d at 171. "The appellant
must have suffered actual, rather than theoretical, harm." Warner, 245 S.W.3d at
461. 

 Appellant argues that, because the trial court gave the jury an instruction on
a presumed fact under penal code section 37.10(g), the court was required to also
give the jury an instruction under penal code section 2.05(a)(2). Appellant asserts
that the failure to do so resulted in the giving of an unconstitutional mandatory
presumption, relying on Webber v. State, 29 S.W.3d 226 (Tex. App.--Houston [14th
Dist.] 2000, pet. ref'd) and Willis v. State, 790 S.W.2d 307 (Tex. Crim. App. 1990). 
The State does not advance any arguments this omission was not error, but does
argue that any possible error did not result in egregious harm. 

 "Mandatory presumptions are unconstitutional because they relieve the State
of the burden of proving every element of the offense beyond a reasonable doubt." 
Garrett v. State, 220 S.W.3d 926, 930 (Tex. Crim. App. 2007). However, an
instruction pursuant to section 2.05 converts a mandatory presumption into a
permissive presumption. Id. at 931. A permissive presumption is not
unconstitutional because it "allows, but does not require, the trier of fact to infer the
elemental fact or ultimate fact from the predicate evidentiary fact or facts." Id. at
931, fn. 5 (quoting Willis, 790 S.W.2d at 310). In order to specify the procedural
consequences of a presumption, and satisfy constitutional strictures, the Legislature
enacted penal code section 2.05 and, so long as section 2.05 is adequately
incorporated into the court's charge containing a presumption, the presumption will
be deemed a permissive one. Willis, 790 S.W.2d at 310.

 In the present case, no instruction pursuant to section 2.05 was contained in
the charges given to the jury in these two cases. We therefore agree with appellant
that the trial court erred in not including an instruction on the law of presumptions
under section 2.05(a)(2). The trial court was mandated to deliver a charge setting
forth the law applicable to the case, (19) and a section 2.05(a)(2) instruction was both
statutorily and constitutionally required. See Webber, 29 S.W.3d at 232-33. 
However, we also agree with the State that, under the record in this case, egregious
harm is not shown.

 We consider first the jury charges and arguments of counsel. The charge
contains general language that appellant was to be considered innocent until proven
guilty and that the State must prove each element of the offenses with which
appellant was charged beyond a reasonable doubt. However, such general language
does not remedy the harm of a mandatory presumption. See Webber, 29 S.W.3d at
232-33 (citing Francis v. Franklin, 471 U.S. 307, 319-20, 105 S. Ct. 1965, 1974
(1985)). 

 In closing argument, appellant referred to the general presumption of
innocence and argued that he did not intend to harm or defraud anyone. The State
argued that the intent to defraud or harm had been shown by the evidence at trial and
then read the instruction regarding the presumption to the jury. The State informed
the jury that the presumption applied--unless they heard evidence at trial that
"would rebut or erase the presumption," which would cause the presumption "to go
away." While far from a complete recitation of the required instructions under
section 2.05(a)(2), this statement did at least inform the jury that the presumption
could, in some circumstances, not apply, and therefore was permissive, rather than
mandatory. Thus the State's argument somewhat ameliorated the harm from the
omission of a section 2.05(a)(2) instruction.

 We consider next the state of the evidence, including contested issues and the
weight of the probative evidence. The only presumption to which the omitted
section 2.05(a)(2) instruction would have applied would be that of penal code
section 37.10(g), regarding the element of intent. As noted in our review of
appellant's sufficiency claims, there was ample circumstantial evidence establishing
the element of intent, even without the application of the presumption of section
37.10(g). Appellant did not present any evidence refuting the issue of intent to
defraud or harm. The overwhelming weight of the evidence demonstrated that
appellant intended to defraud Yarbrough. Where the great weight of evidence
supports the facts giving rise to the presumption, egregious harm is not shown. 
Neely v. State, 193 S.W.3d 685, 688 (Tex. App.--Waco 2006, no pet.); Lewis v.
State, 151 S.W.3d 213, 224 (Tex. App.--Tyler 2004, pet. ref'd); Webber, 29 S.W.3d
at 237. 

 Review of the entire record, including the entire charge, the state of the
evidence, the arguments of counsel, and any other relevant information,
demonstrates that the jury "could not reasonably harbor uncertainty" (20) on the issue
of intent. The record does not demonstrate that appellant suffered any "actual, rather
than theoretical, harm" from the omission of the instruction, much less does it
demonstrate that such error was "so egregious and created such harm that appellant
was denied a fair trial." Warner, 245 S.W.3d at 461. On the record before us, we
conclude that egregious harm was not shown, and we overrule appellant's second
point of error.

Void Punishment

 In his third point of error, appellant asserts that the punishment assessed by
the jury was void. Appellant argues that the jury was improperly permitted to punish
him within a second-degree felony range of punishment when the evidence at trial
did not establish the prerequisites necessary for the punishment range to be raised
to that of a second-degree felony under Texas Penal Code section 37.10(c)(2). (21)

 Appellant was charged with committing an offense under Texas Penal Code
section 37.10(a)(2), (22) and the jury was given a punishment charge containing the
range of punishment for a second-degree felony. Apart from two exceptions, an
offense under penal code section 37.10 is a Class A misdemeanor unless the actor's
intent is to defraud or harm another, in which event the offense is a state jail felony. 
See Tex. Penal Code Ann. § 37.10(c)(1) (Vernon Supp. 2008). However,
subsection 2 of section 37.10(c) provides that

[A]n offense under this section [37.10] is a felony of the third degree if
it is shown on the trial of the offense that the governmental record was
a public school record, report, or assessment instrument required under
Chapter 39, Education Code, or was a license, certificate, permit, seal,
title, letter of patent, or similar document issued by government, by
another state, or by the United States, unless the actor's intent is to
defraud or harm another, in which event the offense is a felony of the
second degree.


Tex. Penal Code Ann. § 37.10(c)(2).

 Appellant asserts that the phrase "issued by government" in section
37.10(c)(2) modifies the term "record, document, or thing" in section 37.10(a)(2),
under which he was prosecuted. (23) Appellant argues that, before he could be
punished for a second-degree felony, the State was required to prove that the
documents he presented were "certificate[s] . . . issued by government." (Emphasis
added). Appellant avers that, because the documents he was alleged to have
presented were not certificates issued by government, but were instead fraudulent
certificates that were not issued by government, he could not be punished for a
second-degree felony. The State responds that Frey testified that the certificates in
question were governmental records issued by the government.

 The resolution of this issue turns on the construction of section 37.10(c)(2)
and, specifically, which term the phrase "issued by the government" is meant to
modify. In construing a statute, the reviewing court should first look to the plain
language of the statute and seek to effectuate the collective intent or purpose of the
legislation. See Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We
therefore turn to the language of the statute and consider its intent and purpose.

 Section 37.10(c)(2) provides for increased punishment for offenses involving
certain types of governmental records whose "tampering with" under section
37.10(a) the legislature has determined merits punishment as a second- or third-degree felony. The phrase "issued by government" in this subsection clearly
modifies the term "governmental record" that appears earlier in the same sentence
and is part of the description of some of the types of governmental documents listed
in the subsection. See Tex. Penal Code Ann. § 37.10(c)(2) ("the governmental
record was . . . a license, certificate, permit, seal, title, letter of patent, or similar
document issued by government.").

 In a prosecution under section 37.10(a)(2) therefore, before a person may be
punished under section 37.10(c)(2) for a second- or third-degree felony, the State
must show that the "genuine governmental record," which the "record, document,
or thing" was intended to be taken as, was one of the types of governmental records
listed in section 37.10(c)(2)--among which are "certificate[s] . . . issued by
government." The phrase "issued by the government" in section 37.10(c)(2) may
therefore serve as a modifier of the term "genuine governmental record" in section
37.10(a)(2), but has no applicability to the term "record, document, or thing" in
section 37.10(a)(2). See Tex. Penal Code Ann. § 37.10(a)(2) ("A person commits
an offense if he . . . makes, presents, or uses . . . any record, document, or thing . . .
with the intent that it be taken as a genuine governmental record."). 

 This construction of the statute permits a defendant convicted of a violation
of section 37.10(a)(2) to be punished for a second- or third-degree felony under
section 37.10(c)(2), if the required showings of section 37.10(c)(2) are made, which
is consistent with the plain language of section 37.10(c)(2) and its intent and
purpose. This construction is also consistent with the language of section 37.10 as
a whole, which does not exclude an offense committed under section 37.10(a)(2)
from punishment under section 37.10(c)(2). (24) Cf. Tex. Penal Code Ann. §
37.10(d) (Vernon Supp. 2008) (providing specific ranges of punishment for offense
involving governmental record described under penal code section 37.01(2)(D)). In the present case, the State presented evidence at trial, through Frey, that
completion certificates issued by the Galveston County Sheriff's Academy (the
"genuine governmental records" which the State contended that appellant's
fraudulent certificates were intended to be taken as) were issued by the academy and
were governmental records. (25) The State also presented evidence establishing that
appellant's intent was to harm or defraud another. Accordingly, the required
showings of section 37.10(c)(2) were made, and the jury was properly charged with
a second-degree range of punishment. We overrule appellant's third point of error.

Ineffective Assistance of Counsel

 In his fourth point of error, appellant argues that his defense counsel rendered
ineffective assistance by not seeking a jury instruction under section 2.05 (a)(2) of
the Texas Penal Code or objecting to its omission from the court's charge. Appellant
asserts that this failure was "clearly deficient," citing Vasquez v. State, 830 S.W.2d
948 (Tex. Crim. App. 1992) (per curiam), and contends that if the jury had been
given such an instruction, the jury "could have determined that the State did not meet
its burden" to prove appellant's intent to defraud or harm. 

 To prove ineffective assistance of counsel, an appellant must show that (1)
trial counsel's representation fell below an objective standard of reasonableness,
based on prevailing professional norms, and (2) there is a reasonable probability that
the result of the proceeding would have been different but for trial counsel's
deficient performance. Strickland v. Washington, 466 U.S. 668, 688-94, 104 S. Ct.
2052, 2064-68 (1984). An appellant must prove both prongs of the Strickland test,
or the contention of ineffective assistance fails. Rylander v. State, 101 S.W.3d 107,
110 (Tex. Crim. App. 2003). 

 We have already held that the failure to submit such instruction did not result
in egregious harm to appellant. For the same reasons detailed in our discussion of
egregious harm, we determine that, even if the failure to request such instruction or
object to its omission constituted deficient performance--which question we do not
decide--there is not a reasonable probability that, but for such failure, the result of
the proceeding would have been different, i.e., appellant would have been acquitted.
Appellant has therefore not met his burden under the second prong of Strickland. 

 We overrule appellant's fourth point of error.

Conclusion


 We affirm both judgments of the trial court.

 



 

 Tim Taft

 Justice


Panel consists of Justices Taft, Bland, and Sharp.

Publish. Tex. R. App. P. 47.2(b).
1. See Tex. Penal Code Ann. §37.10 (a)(2), (c)(2) (Vernon Supp. 2008). 
2. The trial court granted a directed verdict of not guilty as to the count in trial
cause number 06CR1462. 
3. Appellate court cause numbers 01-07-00389-CR and 01-07-00390-CR,
respectively.
4. The second audit was instigated by complaints which ultimately resulted in the
indictment in cause number 06CR1462. The record does not reveal the reason
the first audit was conducted.
5. At trial, Frey testified that certificates of completion issued by the Galveston
County Sheriff's Academy were governmental records. 
6. At the time of trial, the State introduced two certificates that were actually
issued by the Galveston County Sheriff's Academy in 2002 and 2003 for
comparison with the ones presented by appellant in response to Yarbrough's
letter. 
7. At trial, the defense introduced several certificates issued by the academy in
1996 that contained a similar font to that of the certificates in question at trial,
which were dated 2003. 
8. At trial, records from T.C.L.E.O.S.E. detailing courses completed by appellant
were introduced into evidence.
9. The recording of this conversation was played to the jury at trial. 
10. At trial, appellant introduced training certificates for five training courses that
he completed at the Texas City Law Enforcement Training Academy in 1995,
2004 and 2005.
11. Yarbrough acknowledged that no actual harm had come to him personally, nor
had the county been sued because of appellant.


 At trial, the only testimony offered by the defense at the guilt-innocence phase
related to the charge in cause number 06CR1462 for which the judge granted
a directed verdict. Neither party cites to, or relies on, such testimony. For
clarity's sake, we do not detail in our opinion either the State's or appellant's
evidence regarding the charge for which appellant was acquitted.
12. Tex. Penal Code Ann. 37.10(g) (Vernon Supp. 2008) (establishing
presumption of intent to defraud or harm another if person acts with respect to
two or more of same type of governmental records or blank governmental
record forms and such record or blank form is license, certificate, permit, seal
title, or similar government issued by government).
13. The trial court gave an instruction to the jury on this presumption in the court's
charge at guilt-innocence. Appellant did not object to the inclusion of this
instruction.
14. Tex. Penal Code Ann. § 37.10(a)(2) (Vernon Supp. 2008).
15. Appellant does not argue that we should apply the state law evidentiary
sufficiency standard; he asserts only claims of insufficiency under federal
constitutional standards. See Fuller v. State, 73 S.W.3d 250, 252 (Tex. Crim.
App. 2002) ("Malik's evidentiary sufficiency standard [is] a purely state law
standard that is 'foreign to federal constitutional norms' . . . [and so] does not
apply to [federal constitutional] evidentiary sufficiency claims."). 
Nevertheless, we note that a hypothetically correct jury charge for a felony
offense of tampering with governmental record would not include the phrase
"altering the name and date on the certificate" as such phrase is not a statutory
element of the offense charged or an "integral part of an essential element of
the offense." See Tex. Penal Code Ann. § 37.10(a)(2); Gharbi v. State, 131
S.W.3d 481, 482-83 (Tex. Crim. App. 2003). The evidence therefore would
likewise have been sufficient under the corollary state evidentiary sufficiency
standard. Gharbi, 131 S.W.3d at 483; Fuller, 73 S.W.3d at 252-56 (Tex.
Crim. App. 2002); Gollihar v. State, 46 S.W.3d 243, 255-57 (Tex. Crim. App.
2001).
16. Appellant tendered no evidence at trial on the issue of his knowledge or intent. 
He argues on appeal that the record lacks sufficient evidence that he intended
to harm or defraud Yarbrough or knew that the certificates were false. He cites
evidence that the people who worked with him, including Yarborough, had
previously thought highly of him and found him to be an honest individual. He
suggests that he was simply trying to comply with T.C.L.E.O.S.E. requirements
and presented the certificates without being aware that they were "inaccurate." 
Appellant also argues that the community and county were not harmed by his
deficiencies and therefore there was no evidence that appellant intended to
harm or defraud. 
17. Moreover, appellant's challenge to the application of this presumption rests on
the same basis as his challenge to his sentence which we discuss later in this
opinion--namely, that the use of the term "governmental record" excludes the
applicability of this presumption to charges under penal code section
37.10(a)(2) because the documents he provided were not governmental records
issued by government. As noted in our discussion of that issue, we reject such
an application of the term "governmental record." Moreover, testimony from
Frey that the certificates appeared legitimate, except for the name and date,
would support a jury finding that the documents were governmental records,
albeit falsified ones.
18. This section reads:


 (a) except as provided by Subsection (b), when this code or another
penal law establishes a presumption with respect to any fact, it has the
following consequences:


 . . . 


 (2) if the existence of the presumed fact is submitted to the
jury, the court shall charge the jury, in terms of the
presumption and the specific element to which it applies, as
follows:

 

(A) that the facts giving rise to the presumption must
be proven beyond a reasonable doubt;


(B) that if such facts are proven beyond a reasonable
doubt the jury may find that the element of the
offense sought to be presumed exists, but it is not
bound to so find;


(C) that even though the jury may find the existence
of such element, the state must prove beyond a
reasonable doubt each of the other elements of the
offense charged; and 


(D) if the jury has a reasonable doubt as to the
existence of a fact or facts giving rise to the
presumption, the presumption fails and the jury shall
not consider the presumption for any purpose.


Tex. Penal Code Ann. § 2.05(a)(2) (Vernon Supp. 2008). 
19. Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007).
20. Lewis v. State, 151 S.W.3d 213, 224 (Tex. App.--Tyler 2004, pet. ref'd).
21. Tex. Penal Code Ann. § 37.10(c)(2).
22. Tex. Penal Code Ann. § 37.10(a)(2).
23. Under section 37.10(a)(2), a person commits an offense if he "makes, presents,
or uses any record, document, or thing with knowledge of its falsity and with
intent that it be taken as a genuine governmental record[.]" Tex. Penal Code
Ann. § 37.10(a)(2).
24. Under appellant's construction of the statute, an offense committed under
section 37.10(a)(2) could never be punished as more than a state jail felony
because a record, document, or thing which is false and intended to be taken
as a governmental record is, by definition, not a governmental record and
could not be "issued by government
." Appellant proffers no authorities that
would support an argument that the Legislature intended to exclude all
offenses committed under section 37.10(a)(2) from second- or third-degree
felony punishment under section 37.10(c)(2). Appellant's only cited authority,
apart from the statute, is Martinez v. State, 6 S.W.3d 674 (Tex. App.--Corpus
Christi 1999, no pet.); however, Martinez is not pertinent to the question
presented in this issue. Martinez simply holds that an item which is a
governmental record by virtue of being required by law to be kept by others for
the information of government, is not a governmental record "issued" by
government, and so is not the type of governmental record whose "tampering
with" is punishable as a second- or third-degree felony under section
37.10(c)(2). 
25. Moreover, there was testimony from Frey that the documents which appellant
presented appeared to be legitimate completion certificates, except for the dates
and appellant's name. Therefore there was evidence at trial that the documents
in question were governmental records, specifically certificates issued by
government, which had then been altered. Although Frey denied issuing the
documents on the dates noted and for the courses noted, she did not testify that
the documents had never been issued by the academy. Thus, even under
appellant's narrow construction of the statute, the jury was properly charged
at punishment.