**Efrain Nunez MARTINEZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 13–97–854–CR, 13–97–856–CR.**

Court of Appeals of Texas, Corpus Christi.

Oct. 28, 1999.

---

**3.** Tex. Penal Code Ann. Sec. 31.04(f) (Vernon    Supp.1999)

Rene B. Gonzalez, Abel Limas, Brownsville, for Appellant.

Rene Guerra, Dist. & County Atty., Rolando Garza, Asst. Dist. Atty., Edinburg, for State.

Before Chief Justice SEERDEN and Justices HINOJOSA and YANEZ.

## OPINION

Opinion by Justice YANEZ.

In this consolidated appeal, Efrain Nunez Martinez appeals his conviction for tampering with a governmental record,[1] and the subsequent revocation of his probation. The court sentenced appellant to imprisonment for five and seven years, respectively. We affirm the conviction,

---

1. TEX. PEN.CODE ANN. § 37.10 (Vernon 1994 & Supp.1999).

but reverse and remand for a new punishment hearing, and affirm the revocation of probation.

The indictment in this case alleged that appellant,

> on or about the 27th day of February A.D., 1995, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there with intent to defraud and harm another, namely, Juan M. Marroquin, knowingly ma[d]e a false entry in a governmental record, to-wit: a temporary license plate, said false entry being changing the original date sold that had been written on said governmental record to a later date.

In a trial before the court, it was undisputed that appellant purchased a car from Nieto's Auto Sales in Edinburg, Texas, and that he subsequently agreed to sell the car to Juan Marroquin, who made a down payment and took possession of the car. It was also undisputed Marroquin received a temporary buyer's license tag, listing Nieto Auto Sales as the dealer and the date of sale as February 17, 1995, but that Marroquin was not able to obtain title and that the South Texas Auto Theft Task Force ultimately confiscated the car as stolen property.

Marroquin testified that because the temporary buyer's tag was valid for twenty days from the date of sale, he approached appellant several days after the sale to express his concern about the upcoming expiration of the tag. He also requested the vehicle's title in order to get the car registered. According to Marroquin, appellant told him to change the date of sale on the temporary cardboard tag, and when he refused to do so, appellant changed it himself by converting the "1" into a "2" in an attempt to give Marroquin an extra ten days to drive with the temporary tag. The tag expired and Marroquin approached appellant again. This time, appellant provided Marroquin with a dealer's temporary tag.

However, appellant also testified at trial, denying he issued any temporary tags, buyer's or dealer's, and denying he altered the date on the buyer's tag. Appellant claimed that after he and Marroquin agreed to terms, he put Marroquin in contact with Nieto's Auto Sales. He also claimed that Nieto issued the temporary buyer's tags and it was explained to Marroquin that Nieto was waiting for the vehicle's title.

After finding that buyer's temporary tags constitute a governmental record, the trial court found appellant guilty as alleged in the indictment, and also revoked his probation stemming from a 1990 theft conviction.

We first address appellate cause number 13–97–854–CR, the appeal related to the conviction for tampering with a governmental record. In his first issue, appellant contends the trial court was without jurisdiction to hear the case because section 37.10, the penal code statute forming the basis of appellant's conviction, is not controlling. *See* TEX. PEN.CODE ANN. § 37.10 (Vernon 1994). Instead, appellant argues the allegations against him constituted only a misdemeanor pursuant to article 6686(a)(3) of the Texas Revised Civil Statutes. *See* Act effective April 3, 1975, 64th Leg., R.S., ch.33, § 1, 1975 Tex. Gen. Laws 57 (repealed 1995) (current version at TEX. TRANSP. CODE ANN. 503.063 (Vernon 1999)). According to appellant, the two statutes address the same subject matter, but article 6686 should be controlling because it is much more specific than the general provisions of section 37.10. Thus, because the offense was only a misdemeanor, rather than a felony, the trial court was without jurisdiction to hear the case.

We disagree. Without deciding whether the district court would have had jurisdiction over the misdemeanor, we note that former article 6686 applied to the issuance of license plates and temporary tags by a licensed car dealer or manufacturer of motor vehicles. It is undisputed that appellant was neither a licensed deal-

er, nor a manufacturer. Thus, this statute has no bearing on appellant. Furthermore, because article 6686 and section 37.10 do not address the same general subject, have the same general purpose, or relate to the same class of persons or things, they are not considered to be *in pari materia*, whereby the more specific statute would control over the more general. *See Cheney v. State*, 755 S.W.2d 123, 126 (Tex.Crim.App.1988). Appellant's first issue is overruled.

By his second issue, appellant claims there is no evidence to support the trial court's finding that the temporary tag was a governmental record.

In reviewing the legal sufficiency of the evidence adduced at trial, we examine all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Clewis v. State*, 922 S.W.2d 126, 132 (Tex.Crim.App. 1996).

At the time of the offense, section 37.01 of the Texas Penal Code defined a governmental record as: (A) anything belonging to, received by, or kept by government for information; (B) anything required by law to be kept by others for information of government; or (C) a license, certificate, permit, seal, title, or similar document issued by government. Act effective Sept. 1, 1994, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3662 (amended 1997) (current version at TEX. PEN.CODE ANN. § 37.01 (Vernon Supp.1999)). "Government" means: the state; a county, municipality, or political subdivision of the state; or any branch or agency of the state, a county, municipality, or political subdivision. TEX. PEN.CODE ANN. § 1.07(a)(24) (Vernon 1994). The indictment did not specify which category of governmental record applied to the buyer's temporary tag, but in closing arguments before the judge, the State argued the temporary tag

fell under category "B," anything required by law to be kept by others for information of government.

Officer Arturo Casas, an employee of the McAllen Police Department and a member of the South Texas Auto Theft Task Force, testified that the temporary tag gives a buyer the ability to legally drive the car for twenty days from the date of sale, which allows the buyer time to get the vehicle registered. He stated that a police officer can issue a citation to someone for driving with an expired tag or for failing to register the vehicle within the statutory twenty day period. He also testified that he has personally issued citations to people for driving with expired temporary tags and failing to timely register their vehicle. Officer Casas's testimony is consistent with statutory requirements for temporary license plates and vehicle registration. *See, e.g.,* TEX. TRANSP. CODE ANN. §§ 502.402, 502.047, 503.063 (Vernon 1999) (operation of unregistered motor vehicle; operation of vehicle with expired license; expiration of temporary buyer's tag).

■ State, county, and municipal law enforcement officials responsible for patrolling the highways and roads of this State are government officials. *See* TEX. PEN.CODE ANN. § 1.07(a)(24) (Vernon 1994). These officials have a duty to enforce the laws of this State as they relate to the safe and proper operation of motor vehicles driven on Texas roads. This includes the duty to ensure that vehicles being driven are properly registered. Based on Officer Casas's testimony, the temporary buyer's tags are issued by automotive dealers for the purpose of allowing the buyer to drive legally until he or she can get the vehicle registered. Thus, the temporary tags are "kept by others," namely the car buyer, until such time as the buyer gets the vehicle registered. By properly displaying the temporary tags, law enforcement officials are informed that the vehicle has been recently purchased, and in all likelihood, the buyer is awaiting permanent registra-

tion and metal license plates. Therefore, we hold that once a temporary cardboard buyer's tag, with all the requisite information filled in, has been issued to a buyer, it thereafter constitutes a governmental record because it is "required by law to be kept by others for information of government."

Appellant's reliance on *Pokladnik v. State*, 876 S.W.2d 525 (Tex.App.—Dallas 1994, no pet.), is misplaced. There, the State's indictment alleged that false entries were made on governmental records "belonging to" the State Department of Highways and Public Transportation. *Id.* at 527. The court of appeals held the documents in question were not governmental records when the false entries were made because, by the definition alleged in the indictment, they never belonged to the government, had not been received by the government, and were not kept by the government for information. *Id.*

In this case, the State was not limited to proving that the document in question fell within a specific category of governmental record. The State's argument at trial was that the temporary buyer's tag was required by law to be kept by others for information of government. Contrary to *Pokladnik*, the State was not required to prove that the temporary tag belonged to, was received by, or kept by government for information. The distinguishing factor between *Pokladnik* and this case is whether the document was "kept by government for information" or "kept by others for information of government." In this case, the State proved the latter. Thus, we find the evidence legally sufficient to support the trial court's finding that the temporary cardboard tag was a governmental record. Appellant's second issue is overruled.

■ By his third issue, appellant claims there is no evidence, or alternatively, factually insufficient evidence to support the trial court's finding that appellant acted with the intent to defraud or harm Marroquin.

In reviewing the legal sufficiency of the evidence, we apply the same standard of review utilized in appellant's second issue. When reviewing the factual sufficiency of the evidence, we view all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 129. The trial judge, when sitting as the trier of facts, is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony, and may accept or reject all or any part of the testimony of any witness. *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim.App.1995). The reviewing court may not substitute its own judgment for that of the factfinder. *Clewis*, 922 S.W.2d at 133.

In finding appellant guilty, the trial court chose to believe Marroquin, who testified that he witnessed appellant alter the date of sale on the temporary tag. As the reviewing court, we will not attempt to disturb this finding. Instead, we need only determine whether the evidence was legally and factually sufficient to show appellant made the alteration with the intent to defraud or harm Marroquin. Intent to defraud has been defined as the intent to cause another to rely upon the falsity of a representation, such that the other person is induced to act or to refrain from acting. 41 TEX. JUR.3D *Fraud and Deceit* § 9 (1998). The penal code defines harm as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." TEX. PEN.CODE ANN. § 1.07(a)(25) (Vernon 1994). The intent to defraud or harm may be established by circumstantial evidence. *Williams v. State*, 688 S.W.2d 486, 488 (Tex.Crim.App.1985); *Meade v. State*, 641 S.W.2d 345, 347 (Tex.App.—Corpus Christi 1982, no pet.).

In addition to witnessing appellant change the date, Marroquin testified that appellant instructed him to go speak with

Nieto about the title. Marroquin said he met with Nieto only once. While he was there, Nieto told him the car did not have a title. Nieto explained to Marroquin that when appellant took possession of the car, "he [appellant] knew the car did not have a title but he didn't care about it, he would sell the car anyway." Marroquin's testimony is evidence that appellant sold the car with the knowledge that no title existed, yet, appellant led Marroquin to believe he would eventually be able to acquire the title.

The evidence also included State's Exhibit Number Four which was a copy of the temporary tag showing how the date of "2/17/95" had been altered to "2/27/95." Under the date of sale is the following language: "GOOD FOR 20 DAYS FROM THE DATE SOLD. NOT GOOD FOR COMMERCIAL VEHICLE CARRYING A LOAD. ALTERATION WILL VOID THIS TAG." By altering the "1" to a "2," appellant voided the temporary tag. Therefore, instead of having the ability to drive legally for twenty days from the date of sale, Marroquin began driving the car illegally after the alteration, because his tag was no longer valid. When it became clear the temporary tag had finally expired, appellant issued Marroquin one of Nieto's temporary dealer's tags.[2]

In the end, the evidence showed Marroquin never received title to the car. After Marroquin had made $1200 worth of payments to appellant, the car was found to be stolen and it was confiscated by the Auto Theft Task Force. Marroquin never regained possession of the car, and appellant never returned any of the purchase money.

Reviewing all of the evidence in the light most favorable to the prosecution, we find that, based on Marroquin's conversation with Nieto, appellant sold the car to Marroquin with the knowledge a title did not exist and would not be forthcoming. The fact that no title was ever produced and the car was ultimately found to be stolen is some indication appellant altered the temporary tag only to prolong the deception against Marroquin and prevent him from discovering he had purchased a car that could not be registered. Issuing Marroquin a dealer's tag after the buyer's tag had expired is further indication that appellant intended to defraud and harm Marroquin. Finally, appellant's failure to return any of the purchase money to Marroquin helps establish the requisite intent.

Without an actual concession by appellant stating he intended to defraud or harm Marroquin, the intent is not susceptible to direct proof in this case. However, we find the circumstantial evidence of this case legally sufficient to support the trial court's finding that appellant altered the governmental record with the intent to defraud or harm Marroquin.

With regard to the factual sufficiency of the evidence, appellant contends if Marroquin saw him alter the date on the temporary tag, then there was no indication that appellant was attempting to deceive or defraud Marroquin. We find this argument unpersuasive because, at the time appellant altered the tag, Marroquin was unaware no title to the car existed. Further, it appears Marroquin may have been under the mistaken belief that it was acceptable for appellant to make an alteration on the tag because he was the person who issued it. This is evidenced by the fact that Marroquin did not object to appellant changing the date of sale. Marroquin also testified the reason he went to see appellant was to get "an extension to drive legally." Appellant also contends that by changing the date, he provided a benefit to Marroquin by effectively giving him ten additional days to use the temporary tag. However, as discussed, this alteration voided the temporary tag and did not confer a benefit, but instead, harmed Marroquin by depriving him of the ability to drive the car legally.

<hr />

2. Use of dealer's temporary tags are for limited use on an unregistered vehicle by the dealer or the dealer's employees. TEX. TRANSP. CODE ANN. § 503.062 (Vernon 1999).

We conclude the evidence is legally and factually sufficient to support the trial court's finding on appellant's intent to defraud and harm Marroquin. Appellant's third issue is overruled.

Appellant's final issue complains that the five year sentence he received as punishment for a second degree felony is void because the offense proved at trial constituted only a state jail felony.

The addition of the mental state in the indictment raises the offense of tampering with a governmental record from a Class A misdemeanor to a state jail felony. Tex. Pen.Code Ann. § 37.10(c) (Vernon 1994). The punishment range for a state jail felony is confinement in a state jail for any term of not more than two years or less than 180 days. Tex. Pen.Code Ann. § 12.35 (Vernon 1994). If it is shown that the governmental record was a license, certificate, permit, seal, title, or similar document issued by government, the offense is a third degree felony, and the addition of the mental state raises the offense to a second degree felony. Tex. Pen.Code Ann. § 37.10(d) (Vernon Supp. 1999).³

Accordingly, the only way the offense could be elevated to a second or third degree felony would be for the State to show that the record was a "license, certificate, permit, seal, title, or similar document issued by government." Appellant contends that a temporary buyer's tag does not constitute a governmental record *issued by* government, and he also points out that, at trial, the State proceeded on the theory that the temporary tag was a governmental record because it was "anything required by law to be kept by others for information of government." In response, the State says the temporary tag is effectively issued by government because the government, by statute, regulates the form of the tag and the content of what must be printed on the tag.

Officer Casas testified that a dealer obtains temporary cardboard plates by applying to the State for a dealer number. *See* Tex. Transp. Code Ann. § 503.029 (Vernon 1999). This number, preceded by the letter "P" represents an identification number for a particular dealer. Once the dealer is issued a P-number, the dealer will select a printing company to print the cardboard tags subject to the State's guidelines. Casas stated the only information kept by the State is the P-number.

■ While we acknowledge the government maintains an interest with respect to the content and form of a temporary tag, we hold that temporary cardboard buyer's tags do not qualify as a governmental record "issued by government." Automotive dealers get the buyer's tags printed in a form prescribed by the government, but the dealer has the responsibility to get the tags printed and to fill in specific information on the tag, such as the make and serial number of the vehicle, the buyer's name and address, and the date of sale. We find a distinction between a governmental record "issued by government" and one that is, instead, "issued pursuant to the government's instruction." Accordingly, we sustain appellant's fourth point of error and reverse and remand for a new punishment hearing only with respect to appellate cause number 13–97–854–CR. Tex.Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp.1999).

Next, we address appellate cause number 13–97–856–CR, the appeal related to appellant's revocation of probation.

■ In a probation revocation proceeding, the trial court is the sole judge of the credibility of the witnesses and determines whether the allegations in the motion to revoke are true or not. *Garrett v. State,* 619 S.W.2d 172, 174 (Tex.Crim.App. [Panel Op.] 1981). Appellate review of an

---

**3.** The relevant and current portion of section 37.10(d), as it applies to this case, is un-

changed from its prior version.

order revoking probation is limited to a determination of whether the trial court abused its discretion. *Jackson v. State,* 645 S.W.2d 303, 305 (Tex.Crim.App.1983). One sufficient ground for revocation will support the court's order to revoke probation. *Moore v. State,* 605 S.W.2d 924, 926 (Tex.Crim.App.1980); *Burns v. State,* 835 S.W.2d 733, 735 (Tex.App.—Corpus Christi 1992, pet. ref'd).

Appellant's first and second issues argue that, due to the lack of legally sufficient evidence to show the temporary tag was a governmental record and that appellant acted with the intent to defraud and harm Marroquin, there is no basis to revoke his probation. Because we have rejected both of these contentions in the previous appeal, they afford no basis to overturn the revocation of appellant's probation. Moreover, because the evidence is sufficient to support appellant's conviction for tampering with a governmental record, it is also sufficient, under the lesser "preponderance" standard applicable to probation revocation, to revoke appellant's probation in the prior conviction.[4] *See Thomas v. State,* 708 S.W.2d 861, 864 (Tex.Crim.App.1986). Accordingly, appellant's first and second issues related to appellate cause number 13–97–856–CR are overruled.

The judgment of the trial court revoking appellant's probation is affirmed. Appellant's conviction for tampering with a governmental record is affirmed, but the sentence is reversed, and this matter is remanded to the trial court for a new hearing on punishment.

Justice HINOJOSA not participating.

---

4. As a condition of probation in trial court cause number CR–1140–89–F, appellant was not to commit an offense against the laws of Texas or any other state or the United States. In its motion to revoke, the State alleged appellant had committed an offense against the State by tampering with a governmental record with the intent to defraud and harm Juan M. Marroquin.