

NUMBER 13-09-00154-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**FRANK JOSEPH GUERRERO,**                                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                         **Appellee.**

### On appeal from the 156th District Court
### of Live Oak County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Vela
Memorandum Opinion by Chief Justice Valdez**

In this appeal, appellant, Frank Joseph Guerrero, complains about the trial court's

revocation of his probation for allegedly violating several laws of the State of Texas. By

three issues, Guerrero argues that the trial court abused its discretion in revoking his

probation because: (1) the evidence supporting the State's allegation that Guerrero made

a terroristic threat is legally and factually insufficient; (2) the evidence supporting the State's allegation that Guerrero engaged in the criminal offense of injury to a child is legally and factually insufficient; and (3) the revocation order incorrectly states that Guerrero pleaded "true" to all of the allegations contained in the State's motion to revoke. We affirm as modified.

## I. BACKGROUND

On September 12, 2007, a jury found that Guerrero, then seventeen years old, had committed the offense of aggravated assault, a second-degree felony, against his brother. *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b) (Vernon Supp. 2009). The juvenile court entered an order of disposition finding that Guerrero had engaged in delinquent conduct and sentenced him to ten years' confinement in the Texas Youth Commission, conditionally suspended for ten years. *See* TEX. FAM. CODE ANN. § 51.03(a)(1) (Vernon Supp. 2009). On August 6, 2008, when he reached the age of majority, Guerrero was transferred from juvenile probation to adult probation.

While Guerrero was on adult probation, the State filed several motions to revoke Guerrero's probation, alleging that he had violated several laws of the State of Texas. In its most recent motion to revoke filed in February 2009, the State alleged that Guerrero had committed separate offenses of making a terroristic threat and injury to a child. *See* TEX. PENAL CODE ANN. §§ 22.04(a)(3), 22.07(a)(2) (Vernon Supp. 2009). Guerrero pleaded "not true" to the allegations contained in the State's motion to revoke.

On February 20, 2009, the trial court conducted a hearing on the State's motion to revoke. At this hearing, several witnesses testified that Guerrero: (1) made terroristic threats to Brian Leblanc, a former friend of Guerrero's; and (2) assaulted a thirteen-year-

2

old boy who lived in the same apartment complex as Guerrero. Guerrero did not testify, but he called one witness, his girlfriend, Kimberly Ortiz, who testified that Guerrero and Leblanc did not get along and that Guerrero's alleged assault of the thirteen-year-old boy was an accident and was done in the course of "shooing" the boy away from the apartment.

At the conclusion of the hearing, the trial court determined that the evidence supported a finding that Guerrero made terroristic threats to Leblanc and that Guerrero hit the thirteen-year-old boy in the nose and mouth with his elbow. The trial court subsequently revoked Guerrero's probation and sentenced him to ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On March 25, 2009, the trial court certified Guerrero's right to appeal, and this appeal ensued.

## II. STANDARD OF REVIEW

In a proceeding to revoke probation, the burden of proof is on the State to show by a preponderance of the evidence that the probationer violated a condition of probation as alleged in a motion to revoke. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (noting that "an order revoking probation must be supported by a preponderance of the evidence; in other words, that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation"); *Cobb v. State*, 851 S.W.2d 871, 873-74 (Tex. Crim. App. 1993) (en banc); *Davila v. State*, 173 S.W.3d 195, 197 (Tex. App.–Corpus Christi 2005, no pet.). A single violation of a condition of probation is sufficient to support the trial court's decision to revoke probation. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Herrera v. State*, 951 S.W.2d

3

197, 199 (Tex. App.–Corpus Christi 1997, no pet.). Therefore, once the appellate court has found one such violation, it need not address complaints regarding other possible grounds for revocation. *See Moore*, 605 S.W.2d at 926.

The trial court's decision to revoke is reviewed for an abuse of discretion, such that the record must simply contain some evidence to support the decision made by the trial court. *Davila*, 173 S.W.3d at 197; *Martinez v. State*, 6 S.W.3d 674, 680-81 (Tex. App.–Corpus Christi 1999, no pet.) (providing that appellate review of an order revoking probation is limited to a determination of whether the trial court abused its discretion). In reviewing the legal sufficiency of the evidence to support the revocation, appellate courts must review the evidence in the light most favorable to the judgment, giving deference to the trial court as the sole trier of facts, the credibility of the witnesses, and the weight to be given to the evidence presented.[1] *Davila*, 173 S.W.3d at 197; *Martinez*, 6 S.W.3d at 680 (stating that the trial court is the sole judge of the credibility of the witnesses and determines whether the allegations in the motion to revoke are true or not). Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd).

### III. ANALYSIS

**A.    The Trial Court's Judgment**

At the outset of our analysis, we address Guerrero's third appellate issue wherein

---

[1] Guerrero has no right to a factual sufficiency review of the trial court's decision to revoke his probation. *See Davila v. State*, 173 S.W.3d 195, 198 (Tex. App.–Corpus Christi 2005, no pet.).

he argues that the trial court's judgment should be modified to reflect that he pleaded "not true" to the allegations contained in the State's motion to revoke. The State concedes this issue.

The Texas Rules of Appellate Procedure give this Court authority to modify judgments to correct typographical errors and make the record speak the truth. *See* TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.3d 607, 609 (Tex. Crim. App. 1992); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.–Texarkana 2009, no pet.); *see also De La Cruz v. State*, No. 13-07-00722-CR, 2010 Tex. App. LEXIS 2336, at **40-41 (Tex. App.–Corpus Christi Apr. 1, 2010, no pet. h.) (mem. op., not designated for publication). Here, the record reflects that Guerrero, in open court, pleaded "not true" to the allegations contained in the State's motion to revoke. However, the trial court's judgment states that Guerrero entered a plea of "true" to the State's allegations. Because the record clearly demonstrates that Guerrero pleaded "not true" to the State's allegations, we hereby modify the judgment to reflect Guerrero's plea of "not true." *See* TEX. R. APP. P. 43.2(b).

## B. The State's Terroristic Threat Allegation

In his first issue, Guerrero contends that the evidence supporting the trial court's finding that he made terroristic threats to Leblanc is legally and factually insufficient.[2] Specifically, Guerrero argues that the State did not prove that: (1) it was Guerrero who made the threats; and (2) specific intent. The State counters by arguing that the evidence supporting the trial court's finding that Guerrero violated the terms of his probation by

---

[2] As noted earlier, Guerrero is not entitled to a review of the trial court's decision for factual sufficiency. *See Davila*, 173 S.W.3d at 198.

5

making a terroristic threat to Leblanc is sufficient by a preponderance of the evidence.

### 1. Applicable Law

Section 22.07(a)(2) of the penal code provides that a person makes an unlawful terroristic threat "if he threatens to commit any offense involving violence to any person or property with intent to . . . place any person in fear of imminent serious bodily injury." TEX. PENAL CODE ANN. § 22.07(a)(2). The gravamen of the offense is the "threat of violence, made with the intent to place the victim in fear of imminent serious bodily injury." *Williams v. State*, 194 S.W.3d 568, 574 (Tex. App.–Houston [14th Dist.] 2006), *aff'd*, 252 S.W.3d 353 (Tex. Crim. App. 2008). "It is not necessary for the victim to actually be placed in fear of imminent serious bodily injury or for the accused to have the capability or the intention to actually carry out the threat." *Id.* at 574-75.

The requisite intent for terroristic threat requires that the defendant have "the conscious object or desire to" engage in the conduct of threatening to commit a violent act against the complainant and cause the resulting fear of serious bodily injury in the complainant. *See* TEX. PENAL CODE ANN. §§ 6.03(a) (Vernon 2003), 22.07(a)(2); *see also Essang v. State*, No. 01-05-00809-CR, 2008 Tex. App. LEXIS 7337, at **4-5 (Tex. App.–Houston [1st Dist.] Oct. 2, 2008, no pet.) (mem. op., not designated for publication). Intent can be inferred from the acts, words, and conduct of the accused, but cannot be determined only from what the complainant thought at the time of the offense. *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982); *Turner v. State*, 600 S.W.2d 927, 929 (Tex. Crim. App. 1980).

### 2. Discussion

At the February 20, 2009 hearing, Jesus Lopez, a probation officer in Live Oak County, testified that a condition of Guerrero's probation is that he neither commit nor be convicted of any offense in violation of Texas or United States law. Leblanc testified that he began receiving harassing and threatening text messages and voice mails from Guerrero in October 2008. Two of the text messages received by Leblanc stated the following: "I hope your mom dies" and "I hope u [sic] fukin [sic] die when your house explodes tonite [sic]." Leblanc identified the messages as coming from Guerrero's cell phone number but admitted that there was no name shown on the text message and that someone else could have typed and sent the messages from Guerrero's cell phone. Leblanc noted that the messages made him feel threatened and afraid to sleep in his house. Later, Leblanc testified that he received threatening voice mail messages from Guerrero. Leblanc recognized the voice on the threatening voice messages as Guerrero's because Guerrero and Leblanc once were good friends. Leblanc stated that he was being threatened by Guerrero because Guerrero's girlfriend, Ortiz, was staying with Leblanc. As a result of the threatening messages, Leblanc contacted the police and requested that the police instruct Guerrero to stop sending such messages. However, after he received a second set of threatening voice mails, Leblanc indicated his desire to press charges against Guerrero.

On cross-examination, Leblanc admitted that he owned his own house and that he stayed in the house every night, even after receiving the messages from Guerrero. Leblanc also acknowledged that he did not believe the text message stating that Guerrero wished Leblanc's mother would die to be threatening in nature.

7

Joey Rodriguez, a Deputy Sheriff for Live Oak County, testified that he investigated the incidents involving Leblanc and Guerrero. Rodriguez met with Leblanc and recorded the threatening voice mails and took photographs of the above-mentioned text messages. Rodriguez also listened to the voice mails and instantly recognized Guerrero as the individual making the threatening comments in the voice mail messages. Rodriguez testified that he recognized the voice on the voice mails as Guerrero's because Rodriguez had spoken to Guerrero on numerous occasions prior to this incident. After discussing the incident with Leblanc, Rodriguez then called Guerrero and instructed him to "cease all text messages and voice[]mail messages" with Leblanc. Guerrero agreed to do so. However, Rodriguez received a telephone call from Leblanc two days later stating that Guerrero was once again sending threatening messages. Rodriguez and Live Oak County Sheriff's Office Investigator Charlie Stroleny recorded the recently-sent messages, and, at this time, Leblanc indicated his desire to press charges against Guerrero.

Ortiz testified that Guerrero and Leblanc were once friends, but now they were mean to one another. Ortiz recalled that Leblanc once informed Guerrero that if he stepped foot on Leblanc's property, Leblanc would shoot him. Ortiz further testified that Guerrero was incapable of making explosive devices or bombs, and that he had never discussed blowing up houses.

In viewing the evidence in the light most favorable to the trial court's judgment, we cannot say that the evidence supporting the trial court's determination that Guerrero made terroristic threats to Leblanc is legally insufficient. *See Davila*, 173 S.W.3d at 197; *Martinez*, 6 S.W.3d at 680. In particular, the evidence suggests that Leblanc and Guerrero were not friendly to one another, and that Guerrero was upset with Leblanc because Ortiz

was living with Leblanc. While we recognize that the text messages only indicated that they were sent from Guerrero's phone number, we believe that the trial court was reasonable in inferring that Guerrero sent the threatening text messages to Leblanc, especially considering the evidence demonstrates that Guerrero made numerous threatening statements to Leblanc via voice mail, which appears to undermine Guerrero's argument that he did not send the text messages to Leblanc. *See Dues*, 634 S.W.2d at 305; *Turner*, 600 S.W.2d at 929; *see also Hooper v. State*, 214 S.W.3d 9, 15-16 (Tex. Crim. App. 2007) (noting that the fact finder may "draw multiple reasonable inferences as long as each inference is supported by evidence presented at trial," but the fact finder is "not permitted to draw conclusions based on speculation"); *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). In addition, it is irrelevant to our analysis that Ortiz testified regarding Guerrero's apparent inability to carry out the bomb threat and Leblanc's testimony that he continued to sleep at his house even after receiving Guerrero's threatening messages. *See Williams*, 194 S.W.3d at 574-75.

It is clear from our review of the record that by threatening to blow up Leblanc's house, Guerrero intended to instill a sense of fear of serious bodily injury in Leblanc. *See* TEX. PENAL CODE ANN. §§ 6.03(a), 22.07(a)(2); *see also Dues*, 634 S.W.2d at 305; *Turner*, 600 S.W.2d at 929. Therefore, we conclude that there is some evidence supporting the trial court's determination that Guerrero made terroristic threats in violation of Texas law. *See Davila*, 173 S.W.3d at 197; *Martinez*, 6 S.W.3d at 680. Accordingly, we further conclude that the trial court did not abuse its discretion in revoking Guerrero's probation. *See Rickels*, 202 S.W.3d at 763; *Cobb*, 851 S.W.2d at 873-74; *see also Davila*, 173

9

S.W.3d at 197; *Martinez*, 6 S.W.3d at 680-81.  We overrule Guerrero's first issue.

## IV. CONCLUSION

Because we have concluded that there is some evidence supporting the trial court's finding that Guerrero made terroristic threats in violation of Texas law, and because only one violation of a probation condition is sufficient to support the revocation of probation, we need not address Guerrero's second issue pertaining to the sufficiency of the trial court's finding that Guerrero committed the offense of injury to a child.  *See* TEX. R. APP. P. 47.1; *see also Moore*, 605 S.W.2d at 926; *Herrera*, 951 S.W.2d at 199.  Accordingly, we affirm the judgment of the trial court as modified.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
27th day of May, 2010.

10