In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00355-CR
_____

CHARLES PATRICK DUKE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 5
Montgomery County, Texas
Trial Cause No. 15-303192

MEMORANDUM OPINION

In two issues, Charles Patrick Duke appeals his misdemeanor conviction for tampering with an odometer. *See* Tex. Transp. Code Ann. § 727.002 (West 2011). Duke argues the evidence is insufficient to support his conviction and the trial court erred by denying his motion for a continuance after the State amended the information against him and because of his late discovery of the State's disclosures. We overrule his appellate issues and affirm the trial court's judgment.

1

# I. Sufficiency of the Evidence

In his first issue, Duke argues that the evidence is insufficient to support his conviction for tampering with an odometer. *See id.* Duke's appellate brief focuses on the alleged lack of evidence that shows he intended to commit the offense.

When evaluating the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could find the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury is the ultimate authority on the credibility of the witnesses and the weight to be given to their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). A reviewing court must give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* at 16–17. Additionally, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct

evidence in establishing the guilt of an actor" and can be sufficient on its own to establish guilt. *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). In reviewing the legal sufficiency of the evidence supporting a conviction, we consider "*all* evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted." *Demond v. State*, 452 S.W.3d 435, 445 (Tex. App—Austin 2014, pet. ref'd) (emphasis added).

Duke owned Regency Motors, a car dealership in Montgomery County that sold used vehicles. Now retired Detective Keith Jones, who was with the Montgomery County Sheriff's Department Auto Theft Task Force for fifteen years, explained that after receiving a tip that Duke may have committed odometer fraud, he investigated the case and requested various documents for the title history of the truck Duke had sold.

One of the title documents showed that the truck was sold on May 16, 2012, to J. Marlone with the reported mileage of 121,976. Then, on January 7, 2014, Marlone sold the truck to Gullo Ford of Conroe, and the odometer read 172,972 miles. Shortly thereafter, on February 17, 2014, Gullo Ford of Conroe transferred title to Regency and the odometer reported mileage as 172,981. Duke signed the title on Regency's behalf. The sale documents between Gullo Ford of Conroe and Regency for this transfer reflect the same mileage as well. Duke, on behalf of

Regency, then sold the truck to Frank Green on March 4, 2014, and "Exempt" was written in the location for the odometer reading.

According to Detective Jones's testimony, after Green purchased the truck, he had work done on it by Magnolia Auto Specialist. The work order receipt reveals that the mileage on the truck at the time of service was 128,501, considerably lower than the 172,981 miles recorded when Regency took title to the truck, a fact to which Duke stipulated.

Detective Jones interviewed Duke and audio-recorded it. During the interview, Duke, who was not in custody at the time of the interview, admitted to being involved with the tampering of the odometer to help facilitate the sale and financing of the truck, as the finance companies had begun refusing to finance higher mileage vehicles. Detective Jones testified that Duke explained the plan by suggesting that when a vehicle is over ten years old, the vehicle's gauge "cluster" could be changed with one that had lower mileage, and the seller could then report on the transfer documents "exempt" for the odometer reading. Duke acknowledged he obtained the gauge cluster part to replace the original odometer in the truck sold to Green.

In addition to the recording that included Duke's admission about his involvement in changing the gauge cluster to reflect lower mileage on the odometer,

4

Duke also wrote a statement for Detective Jones which the trial court admitted into evidence without objection. The written statement included a sentence that explained that the odometer was changed to "one that had lower mileage to facilitate easier financing."

Detective Jones explained that although he investigated the case, he had never viewed the truck as it was stolen. During cross-examination, Detective Jones stated he was unaware who disconnected the original odometer, and while Duke told him who had performed the automotive work to change the gauge cluster, Detective Jones could not recall the name. Yet Detective Jones testified that he believed that Duke was responsible for the crime. And, Detective Jones did acknowledge that it was legal to replace the gauge cluster with another gauge cluster for repair or aesthetic purposes. But when one replaces a gauge cluster, it is customary that the actual mileage at the time of the replacement be etched on the inside of the driver's door or on the glove box. Detective Jones could not obtain any photographs of either of these locations on the vehicle because the truck was stolen.

A person commits the offense of tampering with an odometer "if the person, with intent to defraud, disconnects or resets an odometer to reduce the number of miles indicated on the odometer." Tex. Trans. Code Ann. § 727.002(a). Duke argues, among other reasons, that because he sold the truck "as is" and, because a seller can

report "exempt" in the space provided for the odometer reading for certain qualified vehicles, the State could not meet its burden to prove that he intended to defraud anyone beyond a reasonable doubt. *See* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, sec. 501.072(c)(3), 1995 Tex. Gen. Laws 1025, 1474 (amended 2017) (current version at Tex. Trans. Code Ann. § 501.072) (explaining that for vehicles ten years or older, the odometer reading does not have to be recorded on the title transfer documents; but "exempt" can be written instead of the actual mileage).

"Intent to defraud" is not defined within the Penal Code or Transportation Code. Generally, undefined statutory terms are to be understood as ordinary usage allows, and jurors may freely read statutory language to have meaning which is acceptable in common usage. *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011). Other courts of appeals have defined "intent to defraud" as "the intent to cause another to rely upon the falsity of a representation, such that the other person is induced to act or to refrain from acting." *Martinez v. State*, 6 S.W.3d 674, 678 (Tex. App.—Corpus Christi 1999, no pet.); *see also Wingo v. State*, 143 S.W.3d 178, 187 (Tex. App.—San Antonio 2004), *aff'd on other grounds*, 189 S.W.3d 270 (Tex. Crim. App. 2006). Moreover, included with the definitions of culpable mental state, a person acts "intentionally, or with intent, with respect to the nature of his conduct

or to a result of his conduct when it is his conscious objective or desire to engage in the conduct[.]" Tex. Penal Code Ann. § 6.03(a) (West 2011).

The intent to defraud may be established by circumstantial evidence such as acts, words, and the conduct of Duke. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). While Duke maintains he had no intent to defraud anyone by replacing the gauge cluster, Duke admitted in his recorded interview and in his written statement that he authorized a mechanic to replace the gauge cluster so that the odometer would read to show fewer miles to induce the sale and financing of the truck. Even though the truck was sold "as is" and it was allowable to record "exempt" on the title transfer documents rather than the actual mileage because of the age of the truck, the evidence shows Duke intentionally engaged in lowering the mileage displayed on the truck's odometer to induce another to purchase or finance the sale of the truck. Given this record, a rational trier of fact could reasonably find that Duke intended, in replacing the gauge cluster with one that reflected a lower odometer mileage, to induce a buyer to buy the truck or to defraud the lender into providing financing for the sale of the truck by showing the truck's mileage was within their permissible range. *See Jackson*, 443 U.S. at 319. We conclude that the

evidence is sufficient[1] to support Duke's conviction and overrule his first issue on appeal.

## II. Denial of Continuance

Duke complains in his second issue that the trial court erred in refusing to grant him at least a ten-day continuance after receiving notice of the State's amendment of the charging instrument shortly before trial. Duke also argues his continuance should have been granted because the State was late in responding to his discovery requests.

### A. Information

As for the amended information, the law provides that "[a]fter notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences." Tex. Code Crim. Proc. Ann. art. 28.10(a) (West 2006). But "[o]n the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if

---

[1] We note that Duke also argues the evidence is factually insufficient to support his conviction. Because the Texas Court of Criminal Appeals has explicitly rejected any distinction between the legal and factual sufficiency standards, we do not address Duke's factual sufficiency complaint. *See Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (holding that the *Jackson* legal sufficiency standard is the only standard a reviewing court should apply when reviewing evidentiary sufficiency).

requested by the defendant, to respond to the amended indictment or information." *Id.*

We may overturn a conviction for the trial court's refusal to grant a defendant time to respond to an amended charging instrument only if the error was harmful; that is, if it "affected his substantial rights." Tex. R. App. P. 44.2(b); *Hamann v. State*, 428 S.W.3d 221, 225 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *see also Gray v. State*, 159 S.W.3d 95, 98 (Tex. Crim. App. 2005) (instructing that statutory violations are to be treated as non-constitutional errors in conducting a harm analysis). "If, looking at the record as a whole, it appears the error 'did not influence the jury, or had but a slight effect,' we must consider the error harmless and allow the conviction to stand." *Hamann*, 428 S.W.3d at 226 (quoting *Trejos v. State*, 243 S.W.3d 30, 41–42 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd)). "To determine whether the trial court's error affected a substantial right, we examine the possible outcomes had the indictment not been erroneously amended." *Trejos*, 243 S.W.3d at 42. Critical to this inquiry is determining whether the indictment or information as written sufficiently informed the defendant of the charge against him to allow him to prepare an adequate defense at trial and whether prosecution under the original indictment would subject the defendant to the risk of being prosecuted

later for the same crime. *Id.* (citing *Gollihar v. State*, 46 S.W.3d 243, 248 (Tex. Crim. App. 2001)).

The original information, dated December 19, 2014, was filed January 13, 2015. The State then sought leave to amend the information adding "disconnect" to the means and manner in which Duke committed the offense. The trial court allowed the State to file that amended information on April 6, 2016. In May 2016, the State again sought leave to amend the information for a second time. The trial court allowed the State to file a second amended information on May 11, 2016, identifying the vehicle, including its VIN number, which Duke was charged with tampering of its odometer. Trial began June 27, 2016. Before the start of trial, Duke objected to proceeding to trial as he had just received the second amended information. The State explained that when the State amended the information the second time— adding the vehicle identification information—the State mistakenly sent Duke another copy of the first amended information and not the second.

The State argued that the second amended information had been on file for at least forty-five days and that Duke was aware of the specific vehicle involved in the offense. The second amendment to the information added nothing "completely new or revolutionary." Duke offered that originally there were possibly three vehicles that the charge could have pertained to. When defense counsel reviewed the court's

10

entire file, he did not locate the second amended information. Duke acknowledged though that he did receive notice that a second amended information had been filed and that the trial court had conducted a prior hearing at which the trial court directed the State to amend the information to identify the vehicle.

Duke argued that he would suffer harm if he was forced to proceed to trial on the second amended information because he did not have the opportunity to locate and interview the complaining witness prior to trial. The State noted that only one vehicle was ever at issue and the State had discussed that vehicle with Duke. After considering the arguments and affirming that the seconded amended information added only the vehicle information, the trial court noted the identity of the vehicle had been discussed several times during pretrial and the second amended information had been on file since May 11, 2016. The trial court found that Duke had ample notice of the second amended information and denied Duke's motion for continuance.

We have reviewed the record and conclude Duke did not establish surprise by the second amendment of the information identifying the specific vehicle as Duke had actual awareness of the vehicle made the subject of the charges before the second amendment to the information. The first amended information, which Duke acknowledged having notice of during the hearing, charged Duke by manner and

11

means of tampering with the odometer either by disconnecting or resetting it to reduce the number of miles.[2] Assuming without finding the State failed to timely serve Duke with the second amendment to the information before the start of trial as governed by article 28.10, we conclude Duke suffered no harm.

**B. Discovery**

Although not argued under a separate issue, Duke also complains about being served with discovery responses from the State after the date provided by the discovery order but more than fourteen days before trial. *See* Tex. R. Evid. 902(10)(A) (providing for admissibility of business records accompanied by affidavit if the records and affidavit are served on each party at least fourteen days prior to the day trial begins). In moving for a continuance, Duke asserted the disclosures were extensive and he needed more time to evaluate them before trial.

---

[2] Duke argues in his appellate brief that the second amended information included the additional manner and means of "disconnect", as well as resetting the odometer and that the trial court allowed an instruction that the jury could find Duke guilty of the charges for either disconnecting or resetting the odometer, rather than having to find that he engaged in both of the manner and means of committing the offense. However, we note the first amended information added disconnect as a way that Duke could commit the offense. A jury instruction can include different modes of commission of the offense in the disjunctive when the charging instrument presents the modes in the conjunctive. *See Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014) (citing *Pizzo v. State*, 235 S.W.3d 711, 715 (Tex. Crim. App. 2007)).

12

But Duke identified no specific records that he could not review before trial was set to begin.

The trial court signed a discovery order requiring the State to disclose specified documents within ten days of December 1, 2015. Duke represented to the trial court that he did not receive the discovery responses until June 7, 2017. Duke specifically complained that the records were extensive, that the person providing the business records affidavit was a suspected felon, and that the State's untimely response to the discovery requests did not allow sufficient time to prepare adequately for trial. The trial court denied the continuance.

During trial, when the State sought to admit exhibits 1, 2, and 3, Duke objected to their admission on the grounds that he did not have sufficient time to review the evidence because of the State's failure to comply with the trial court's discovery order. For each exhibit, the State explained that it provided the evidence to Duke as soon as the State obtained it and that Duke could not show he was prejudiced in his defense by not receiving the evidence sooner. The trial court admitted the exhibits explaining that the discovery order did not provide a deadline beyond which the State could no longer supplement its discovery and the State had a duty to supplement its discovery responses to disclose new evidence to Duke within a

reasonable time after it was received by the State. We conclude that the trial court did not err in concluding the State did not violate the discovery order.

In any event, to warrant excluding evidence, "the relevant inquiry is whether the prosecutor acted with specific intent to willfully disobey the discovery order by failing to turn over the evidence." *Francis v. State*, 445 S.W.3d 307, 313 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 428 S.W.3d 850 (Tex. Crim. App. 2014); *see also Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). The prosecutor's action may be extremely negligent or even reckless; but to warrant the evidence's exclusion from admission, the prosecutor's conduct must rise to the level of willfulness. *State v. LaRue*, 152 S.W.3d 95, 97 (Tex. Crim. App. 2004). To determine if the prosecutor acted willfully, we consider "whether the record indicates that (1) the prosecutor intended to harm the defense, (2) the prosecutor's actions were a strategic and purposeful effort to thwart the defense's preparation of its case, or (3) the prosecutor consciously decided to violate the plain directive of the discovery order." *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd); *see also Oprean*, 201 S.W.3d at 727–28.

Based on the record before us, we conclude there is no evidence suggesting the State willfully disobeyed the discovery order by failing to supplement its

14

discovery responses timelier. We overrule Duke's second issue in its entirety and affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on March 1, 2018
Opinion Delivered August 15, 2018
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.